UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GILBERT ALLAN SEGAL JR.,

               Plaintiff,

      -against-

NEW YORK MILITARY ACADEMY (ALL
ENTITIES INCLUDING, BUT NOT LIMITED TO
INSURANCE REPRESENTATIVES, ETC); and
RESEARCH CENTER ON NATURAL
CONSERVATION INC.,
              Defendants.

Case No. 21-CV-6872-VB

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Travis Pierre-Louis
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
travis@crumiller.com
Attorneys for Plaintiff

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.      EXTRINSIC MATERIALS ATTACHED TO THE MOTION TO DISMISS ARE NOT

COGNIZABLE ............................................................................................................. 6

II.     PLAINTIFF DID NOT RECEIVE CONSTITUTIONAL DUE PROCESS BEFORE

NYMA'S BANKRUPTCY ........................................................................................... 8

    A.   PLAINTIFF WAS A KNOWN CREDITOR AT THE TIME OF DISCHARGE ........... 9

    B.   NYMA'S FORM OF NOTICE WAS CONSTITUTIONALLY INSUFFICIENT ....... 12

III.    PLAINTIFF'S CLAIMS DO NOT CONSTITUTE PRE-PETITION CLAIMS ........... 15

IV.     PLAINTIFF HAS SUFFICIENTLY ALLEGED CAUSES OF ACTION AGAINST

RCNC ........................................................................................................................ 16

    A.   DEFENDANTS' STATEMENT OF FACTS PERTAINING TO RCNC SHOULD BE

    DISREGARDED ......................................................................................................... 16

    B.   RSCS IS LIABLE FOR THE UNLAWFUL CONDUCT OF ITS PREDECESSOR ... 17

    C.   WHETHER RSCS IS A "GOOD FAITH PURCHASER" IS A FACT INQUIRY ...... 19

V.    PURSUANT TO 11 U.S.C. § 524(E), PLAINTIFF SHOULD BE PERMITTED TO

PROCEED AGAINST NYMA TO ESTABLISH LIABILITY AS A PREREQUISITE TO

RECOVERY FROM INSURERS.................................................................................. 20

VI.    PLAINTIFF'S NYSHRL CAUSES OF ACTION ARE AMPLY PLED AND

REVIVED BY THE CVA............................................................................................... 21

VII.    PLAINTIFF ADEQUATELY PLED THEIR STATUS AS AN "ABUSED CHILD"

AND IS ENTITLED TO RELIEF FOR DEFENDANTS' FAILURE TO REPORT ABUSE  24

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,

    585 F.3d 696, 702 (2d Cir. 2009) ................................................................. 17, 18

*Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*,

    267 F.3d 30, 33 (1st Cir. 2001) ........................................................................ 7

*Anwar v. Fairfield Greenwich Ltd.*,

    831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011) ...................................................... 7

*Atlas Partners, LLC v. STMicroelectronics, Int'l NV*,

    No. 14 Civ. 7134 (VM), 2015 WL 4940126, at *8 (S.D.N.Y. Aug. 10, 2015) ......... 8

*BankUnited, NA. v. Merrit Env 't Consulting Corp.*,

    360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) ...................................................... 6

*Bell Atlantic v. Twombly*,

    550 U.S. 544, 555 (2007) ................................................................................ 5

*BL Doe 3 v. The Female Acad. of Sacred Heart*,

    158 N.Y.S.3d 474 (N.Y. App. Div. 2021) ........................................................ 21

*Burgos v. Pulse Combustion, Inc.*,

    227 A.D.2d 295 (1st Dept. 1996) ................................................................... 18

*Caldwell v. City of New York*,

    No. 21 Civ. 6560, 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) ................. 22

*Cargo Partner AG v. Albatrans, Inc.*,

    352 F.3d 41, 45 (2d Cir. 2003) ...................................................................... 18

*Chambers v. Time Warner, Inc.*,

    282 F.3d 14 7, 153 (2d Cir. 2002) ........................................................................... 8

*Chemetron Corp. v. Jones*,

    72 F.3d 341 (3d Cir. 1995) ................................................................................... 10

*City of New York v. New York, N. H. & H. R. Co.*,

    344 U.S. 293, 296 (1953) ...................................................................................... 9

*Coe v. Regan*,

    19-CV-05327(ENV)(VMS) (E.D.N.Y. January 28, 2022) ............................... 21, 22

*Connecticut v. Doehr*,

    501 U.S. 1, 12 (1991) ........................................................................................... 8

*Cummings v. City of New York*,

    No. 19 Civ 7723 (CM) (OTW), 2020 WL 882335, at *3 n.2 (S.D.N.Y. Feb. 24, 2020) ........... 6

*Davis v. Monroe Cty. Bd. of Educ.*,

    526 U.S. 629, 633 (1999) .................................................................................... 23

*DMJ Assocs., L.L.C. v. Capasso*,

    565 B.R. 27 (E.D.N.Y. 2016) .............................................................................. 15

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,

    747 F.3d 145, 153 (2d Cir. 2014) ........................................................................ 13

*FL v. Hilton Cent. Sch. Dist.*,

    6:21-CV-06551-FPG (W.D.N.Y. May 25, 2022) ................................................. 21

*Friedl v. City of New York*,

    210 F.3d 79, 83 (2d Cir. 2000) ......................................................................... 6, 16

*Gould v. ILKB LLC,*

    2:20-cv-5154 (DRH) (JMW), at *27-28 (E.D.N.Y. June 9, 2022) .......................................... 18

*Green v. Welsh*,

    956 F.2d 30, 35 (2d. Cir. 1992) ........................................................................... 20, 21

*Hanson v. Hicksville Union Free Sch. Dist.*,

    209 A.D.3d 629 (N.Y. App. Div. 2022) ............................................................... 24, 25

*Helprin v. Harcourt, Inc.*,

    277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003) ............................................................ 6

*In Matter of Motors Liquidation Company*,

    829 F.3d 135 (2d Cir. 2016) ................................................................. 8, 9, 12, 14

*In re Chateaugay Corp.*,

    154 B.R. 416, 419 (S.D.N.Y. 1993) ....................................................................... 15

*In re Cooper*,

    592 B.R. 469, 482 (S.D.N.Y. 2018) ....................................................................... 20

*In re Grossman's Inc.*,

    607 F.3d 114, 125-26 (3d Cir. 2010) ...................................................................... 9

*In Re Jet Florida Systems, Inc.*

    883 F.2d 970, 973 (11th Cir. 1989) ...................................................................... 21

*In re Lehman Bros. Holdings, Inc.*,

    415 B.R. 77, 83-84 (S.D.N.Y. 2009) ...................................................................... 19

*In re Mifflin Corp.*,

    123 F.2d 311, 315 (3d Cir. 1941) ......................................................................... 10

*In re Traylor*,

    94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989) .............................................................. 21

*In re XO Commc'ns, Inc.*,

    301 B.R. 782, 793-94 (S.D.N.Y. 1995).................................................................. 10

*Kane v. Mount Pleasant Cent. Sch. Dist.*,

    20-CV-7936 (CS) (S.D.N.Y. Nov. 3, 2021)........................................................... 21

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*,

    126 F.3d 380 (2d Cir. 1997)........................................................................... 19, 20

*Miglino v. Bally Total Fitness of Greater N.Y., Inc.*,

    20 N.Y.3d 342, 351 (2013) ............................................................................ 16, 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

    339 U.S. 306 (1950) .............................................................................. 8, 9, 11, 12

*Newman Schwartz v. Asplundh Tree Expert Co.*,

    102 F.3d 660, 662 (2d Cir. 1996)........................................................................ 6, 9

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,

    633 F.3d 81, 89 (2d Cir. 2011).............................................................................. 23

*Pension Ben. Guar. Corp. v. Oneida Ltd.*,

    562 F.3d 154, 157 (2d Cir. 2009)......................................................................... 15

*Pujals v. Standard Chartered Bank*,

    533 F. App'x 9 (2d Cir. 2013)................................................................................. 7

*Rocco v. Goldberg (In re Goldberg)*,

    487 B.R. 112 (Bankr. E.D.N.Y. 2013).................................................................. 23

*Roth v. Jennings,*

    489 F.3d 499,509 (2d Cir. 2007) ................................................................. 6

*Schumacher v. Richards Shear Co.,*

    59 N.Y.2d 239, 244-45 (N.Y. 1983) ......................................................... 17

*Sweeney v. Alcon Laboratories,*

    2021 WL 1546031 (2d. Cir. 2021) ............................................................ 12

*Turner Constr. Co., Inc. v. Brian Trematore Plumbing & Heating, Inc.,*

    2009 WL 3334823, at *4 (D.N.J. Oct. 13, 2009) ..................................... 10

*UCAR Int'l, Inc. v. Union Carbide Corp.,*

    No. 00-cv-1338, 2004 WL 137073, at *13 (S.D.N.Y. Jan. 26, 2004) ...................................... 10

*Vaher v. Town of Orangetown,*

    916 F. Supp. 2d 404, 425 n.19 (S.D.N.Y. 2013) ....................................... 8

*Wallace v. Kato,*

    549 U.S. 384, 388 (2007) ......................................................................... 15

*Young v. Campbell,*

    87 A.D.3d 692 (N.Y. App. Div. 2011) ..................................................... 24

## STATUTES

11 U.S.C. § 101(5)(A) ....................................................................................... 15

11 U.S.C. § 524(e) ............................................................................................. 20

Bankruptcy Code § 363(m) ............................................................................... 18

CERCLA § 107(a) .............................................................................................. 15

CPLR § 214-g ................................................................................................ 1, 22

Family Court Act § 1012(e) .............................................................................. 25

Family Court Act § 1012(g)..................................................................... 25

N.Y. Soc. Serv. Law §§ 413 and 420....................................................... 24

U.S. Const. amend. V................................................................................ 8

U.S. Const. amend. XIV ........................................................................... 8

## OTHER AUTHORITIES

Collier on Bankruptcy § 4-521[2][b] (15th Ed. Rev. 2011) ....................... 12

Plaintiff Gilbert Allan Segal JR. respectfully submits this memorandum of law in opposition to Defendants New York Military Academy ("NYMA" or "the academy") and Research Center on Natural Conservation Inc. ("RCNC") Motion to Dismiss, Dkt. No. 51 ("MTD").

## PRELIMINARY STATEMENT

This case was instituted under the revival clause of the Child Victims Act ("CVA"). *See* CPLR § 214-g. Between the ages of 11 and 12, Plaintiff was a junior cadet at NYMA. Throughout their[1] time as a cadet, Plaintiff was routinely physically abused in accordance with NYMA's practice of ritual hazing. Plaintiff was repeatedly sodomized and gang raped by other cadets at the academy. Additionally, Plaintiff was regularly beaten with broom sticks, mops, and socks stuffed with various materials, such as metal locks. The frequent abuse resulted in clear signs of physical distress, which was noticed and openly discussed by NYMA staff to Plaintiff. Plaintiff reported the abuse to several members of NYMA, including specifically complaining to NYMA's principal that they were being sexually abused.

Although NYMA was aware Plaintiff was routinely beaten and sexually abused, no members of staff reported the abuse to the authorities or took any other steps to stop the abuse. Instead, NYMA staff retaliated against Plaintiff for opposing the abuse – going so far as to slap Plaintiff across the face and berate them at length for what they characterized as "lies." The severe and pervasive culture of physical and sexual abuse has had longstanding effects on Plaintiff's physical and emotional health and has permeated virtually every aspect of their adult life.

---

[1] Plaintiff uses the pronouns "they" / "them" / their."

Defendants' motion to dismiss relies primarily on their 2015 Chapter 11 bankruptcy, which Defendants incorrectly argue discharges Plaintiff's claims and precludes Plaintiff from bringing the instant action. This argument relies entirely on factual allegations not asserted in the Complaint and 12 exhibits that cannot be considered on this on this 12(b)(6) motion. Moreover, even if this Court credits Defendants' argument that Chapter 11 bankruptcy could preclude such a lawsuit, Defendants' argument is flawed in two material respects: (1) Defendants failed to provide Plaintiff with constitutionally required notice during the bankruptcy proceeding, prohibiting discharge of their claims; and (2) Plaintiff did not have a "right to payment" at the time of the filing of the bankruptcy petition and their claims were not subject to discharge.

## FACTUAL BACKGROUND

In 1996, New York Military Academy was a coeducational private military boarding school for grades 5-12. Am. Compl., Dkt. No. 47 (the "Complaint"), ¶ 10[2]. NYMA's student body was separated into "companies", or military units, and required students to follow a chain of command. ¶¶ 11-13. Failure to follow the chain of command by junior cadets resulted in physical discipline. ¶¶ 14-18. NYMA hired staff responsible for supervising and providing care to the students. ¶ 15. However, NYMA staff absconded its responsibility over the cadets by empowering children to exercise control over their more junior counterparts. ¶ 19. NYMA maintained a culture of ritual hazing by senior cadets and adult staff, which left junior cadets with visible bruises and open gashes. ¶¶ 20-26. NYMA was aware of the child abuse and took efforts to conceal the abuse from the public. ¶¶ 28-30.

In September 1996, at age 11, Plaintiff enrolled as a fifth-grade student at NYMA. ¶¶ 32; 35. Beginning that month and in the months that followed, Plaintiff was repeatedly attacked and

---

[2] All paragraph citations herein, unless otherwise specified, are citations to the Third Amended Complaint.

beaten to unconsciousness in their on-campus bedroom by other NYMA students who used broomsticks, mops, socks filled with varied items, and other objects. ¶¶ 45-48; 50-53. In December 1996, Plaintiff was repeatedly attacked, beaten, as well as sexually assaulted, sodomized and/or raped in their on-campus bedroom by NYMA students. ¶¶ 54-61. In January 1997, the attacks and abuse intensified and began to leave visible signs of abuse, including but not limited to a busted lip, bruises, and a limited range of motion, which was noticed by NYMA staff and faculty. ¶¶ 54-61; 76. In or about late January 1997, NYMA's band instructor, Col. Frank Forgione, noticed the signs of abuse, questioned Plaintiff about the abuse, encouraged Plaintiff to accept the abuse, and failed to take any steps to stop the abuse. ¶¶ 70-73.

In or about February 1997, NYMA's fifth-grade teacher Jamie Norris noticed the signs of abuse and questioned Plaintiff about the abuse but failed to report the abuse to the authorities or anyone outside of NYMA. ¶¶ 76-78; 80. That same month, Plaintiff complained to NYMA's principal, Colette Austin, that they were being sexually abused on campus by students. ¶¶ 82-87. Austin reported the complaint of sexual abuse to NYMA staff member Captain Alexander but did not report the abuse to the authorities or take any other steps to stop the abuse. ¶¶ 88-90. Shortly thereafter, Alexander called Plaintiff and his peers into formation. ¶ 91. Alexander chastised the students; in doing so, he admitted he was aware students were physically abusing each other at night in their bedrooms. ¶¶ 92-93. Alexander them redirected his attention to Plaintiff, berated them at length for "making up lies" about sexual abuse, and slapped them across the face in retaliation for their protected complaints of sexual abuse. ¶¶ 94-98. Alexander did not report the abuse to the authorities or anyone outside of NYMA. ¶ 100.

In or about March 1997, Plaintiff attempted to report the abuse to their parents by telephone, but Alexander – who was listening in the call – stopped Plaintiff and abruptly ended

3

the call. ¶¶ 104-108. That same month NYMA staff member Sergeant Romero noticed Plaintiff's signs of abuse and questioned Plaintiff about the abuse, but did not report the abuse to authorities or take any action to stop the abuse. ¶¶ 109-110. In April 1997, Plaintiff was again beaten, sodomized and raped on NYMA's campus, which resulted in a large gash on their hand. ¶¶ 112-118. The next day, Forgione noticed the gash on Plaintiff's hand and sent them to see the NYMA's physician, who provided medical care but did not question Segal about their injuries, report the injuries to authorities, or take any steps to stop the abuse. ¶¶ 119-125. For the remainder of the school year, Plaintiff was beaten, sodomized, sexually harassed, and/or raped on NYMA's campus on countless occasions. ¶ 103. In September 1996, at age 12, Plaintiff returned to NYMA for the sixth grade. ¶¶ 131-132. Immediately upon their return, Plaintiff was again physically and sexually abused, which resulted in visible injuries. ¶ 134; 136. NYMA Staff and faculty frequently questioned Plaintiff about their injuries, but no one ever reported the abuse to the authorities. ¶ 137. The abuse persisted until April 1997, at which point Plaintiff convinced their parents to remove them from NYMA. ¶¶ 134; 149-153.

Plaintiff was not the only child physically and sexually abused while on NYMA's campus. Upon information and belief, between 1980-1981, a different NYMA student (hereinafter referred to as VCVAWCR-DOE[3]), at age of 10, was repeatedly raped while on NYMA's campus by senior cadets. ¶¶ 185-191. VCVAWCR-DOE attempted to report the rapes but was physically restrained and reprimanded by a NYMA staff member in retaliation. ¶¶ 192-194. Upon information and belief, in or about 1995, another NYMA student (hereinafter referred to as John Doe 54 F.G.[4]), at age twelve, was repeatedly sexually abused while on NYMA's

---

[3] VAVAWCR-DOE refers to a pseudonym used for the plaintiff in VCVAWCR-DOE v. New York Military Academy, et al; Index No. 50488/2021.
[4] John Doe 54 5.G.4 refers to the pseudonym used by the plaintiff in Doe v. New York Military Academy; Index No. EF005731-2021.

campus by a NYMA staff member. ¶¶ 196-204. In 2003, a different NYMA cadet was physically abused by other cadets while on NYMA's campus, and his mother commenced a civil action against NYMA for their negligence resulting in the abuse. ¶¶ 165-167. In 2004, a different NYMA cadet was repeatedly physically abused by other cadets resulting in a deep puncture wound in his leg, a large gash to his head, and multiple trips to the emergency room. ¶¶ 168-171. This cadet informed his mother of the abuse, who complained to a NYMA staff member who dismissed the report of abuse out of hand. ¶¶ 172-174. Following this, the cadet's mother commenced a civil action against NYMA for their negligence, the lawsuit was reported by the New York Times, and the assailants who assaulted the cadet were criminally charged. ¶¶ 175-177. Upon information and belief, other confirmed and alleged incidents of abuse surfaced during this time through other lawsuits and in the media. ¶ 178. In February 2005, NYMA received a letter from their local police chief warning that their failure to report abuse raised potential criminal liability. ¶ 179. In or about 2010, NYMA admitted through their press releases that negative publicity caused by the series of abuse allegations was a driving factor in the potential closure of the academy. ¶¶ 181-183.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility requirement means that a complaint must contain enough facts to raise a "reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Id.* at 566. The Court's review is limited to the facts pleaded by the Plaintiff, which are deemed true. "The court is further required to view all allegations raised in the complaint in the light most favorable to the non-moving party." *Newman Schwartz v.*

*Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). Absent conversion of the motion to

one for summary judgment, this Court cannot consider facts alleged in memoranda of law. *Friedl*

*v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

## ARGUMENT

## I.    EXTRINSIC MATERIALS ATTACHED TO THE MOTION TO DISMISS ARE NOT COGNIZABLE

At the threshold, the Court must determine to what extent the 13 exhibits Defendants

have appended to their motion to dismiss can be considered.

In resolving a motion to dismiss under Rule 12(b)(6), a district court may consider only

the allegations on the face of the complaint and the materials it attaches. The Court may

permissibly consider extrinsic materials only where such are incorporated by reference or where

a document is one "upon which [the complaint] *solely* relies and which is *integral to the*

*complaint*." *Roth v. Jennings*, 489 F.3d 499,509 (2d Cir. 2007) (emphasis and modification in

original); *see also Cummings v. City of New York*, No. 19 Civ. 7723 (CM) (OTW), 2020 WL

882335, at *3 n.2 (S.D.N.Y. Feb. 24, 2020) ("In reviewing a motion to dismiss, a court may

consider, *inter alia*, (1) documents that are incorporated by reference into the complaint, and (2)

documents that, even if not incorporated by reference, the defendant has notice of and that are

'integral' to the complaint without converting the motion to dismiss to a motion for summary

judgment." (*quoting BankUnited, NA. v. Merrit Env 't Consulting Corp.*, 360 F. Supp. 3d 172,

183 (S.D.N.Y. 2018)). For a document to be incorporated by reference, the complaint must make

a "clear, definite and substantial reference to the document[]." *Helprin v. Harcourt, Inc.*, 277 F.

Supp. 2d 327, 330-31 (S.D.N.Y. 2003). For the document to be "integral," the complaint must

"rel[y] heavily upon its terms and effects, and the plaintiff has actual notice of all the information

in the documents and relied upon those documents in framing the complaint." *Anwar v. Fairfield*

*Greenwich Ltd.*, 831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011) (internal citations omitted), *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 9 (2d Cir. 2013) (summary order).

Defendants incorrectly rely on *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001), an out-of-circuit decision, in support of the proposition that the exhibits should be considered as "central to plaintiff's claim and … referenced in the complaint." This case not only does not support Defendants' contention but actually undermines their case. In *Alt. Energy*, the Court determined that a settlement agreement which was specifically referred to in the complaint numerous times, and whose authenticity was not in dispute, could be considered.

The matter at bar is clearly distinguishable. Here, Defendants request the Court consider thirteen exhibits, twelve of which contain documents Defendants proffer as related to their prior bankruptcy. While there is mention of the bankruptcy taking place in 2015, these documents are not referred to in the Complaint. ¶¶ 6; 183-184. Moreover, Plaintiff has no personal familiarity with these documents and has had no opportunity for discovery and cannot ascertain the authenticity of any of these documents at this stage of litigation. Indeed, Defendants clearly misstate the narrow exception districts allow for the review of extrinsic materials at the motion to dismiss stage.

Applying the correct standards above, exhibits 2-13 are clearly not cognizable. None of these documents, which Defendant claims to be related to their bankruptcy, are integral to the Complaint. These documents have little – if any – probative value in supporting or refuting Plaintiff's claims of child abuse, negligence, discrimination, retaliation, and statutory failure to report. There is no allegation in the Complaint that Plaintiff ever saw any of these documents, relied on these documents, were aware of their contents, or has any reason to trust their

authenticity. These documents were not even contemplated in the drafting of the Complaint,

never mind relied on. In the Complaint, Plaintiff only states that the bankruptcy occurred, and

this glancing reference is insufficient to make any of these documents "integral" to the

complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 14 7, 153 (2d Cir. 2002) ("[A]

plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary

prerequisite to the court's consideration of the document on a dismissal motion; mere notice or

possession is not enough.") (emphasis in original); *Atlas Partners, LLC v. STMicroelectronics,*

*Int'l NV*, No. 14 Civ. 7134 (VM), 2015 WL 4940126, at *8 (S.D.N.Y. Aug. 10, 2015). To the

extent Defendants attempt to argue any of the exhibits qualify as official public records,

Defendants have not submitted an affidavit authenticating the documents as such. These

documents are unspecified, and it appears several of these documents were never filed nor

produced as part of the bankruptcy proceeding. *See Vaher v. Town of Orangetown*, 916 F. Supp.

2d 404, 425 n.19 (S.D.N.Y. 2013) ("even if the court could theoretically take judicial notice of

this document as a public record, the document has not been authenticated by Defendants"). The

Court therefore should set aside exhibits 2-13.

## II.    PLAINTIFF DID NOT RECEIVE CONSTITUTIONAL DUE PROCESS BEFORE NYMA'S BANKRUPTCY

The Due Process Clause provides, "No person shall … be deprived of life, liberty, or

property without due process of law." U.S. Const. amend. V; *see also* U.S. Const. amend. XIV.

Certain procedural protections attach when "deprivations trigger due process." *Connecticut v.*

*Doehr*, 501 U.S. 1, 12 (1991). Generally, legal claims are sufficient to constitute property such

that a deprivation would trigger due process scrutiny. *In Matter of Motors Liquidation Company*,

829 F.3d 135, 158 (2d Cir. 2016). Once due process is triggered, the question becomes what

process is due and according to the Supreme Court in *Mullane v. Cent. Hanover Bank & Tr. Co.*,

"[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). This requirement applies to bankruptcy proceedings. *In Matter of Motors Liquidation Company*, 829 F.3d at 159. Claims otherwise subject to discharge are not discharged where "fundamental principles of due process" have not been satisfied. *In re Grossman's Inc.*, 607 F.3d 114, 125-26 (3d Cir. 2010).

Defendants' argument that Plaintiff's claims were discharged hinges on two fact questions: (1) whether Plaintiff was a known creditor during the time of the NYMA bankruptcy proceedings; and (2) whether NYMA provided Plaintiff with notice constitutionally sufficient to discharge Plaintiff's claims. Defendants assert – without discovery or evidentiary support – that "NYMA could not have reasonably been aware, nor should they have been aware, of Plaintiff's claim" (MTD at p. 15), and that notice by publication was sufficient. Defendants' contention ignores the well pled factual allegations in the Complaint regarding Defendants' knowledge. These facts must be accepted as true at the motion to dismiss stage. *Newman Schwartz*, 102 F.3d at 662. Defendants had actual knowledge of Plaintiff's claims, and under well-established bankruptcy law, NYMA had a duty to provide actual notice to Plaintiff of the bankruptcy proceedings, yet it failed to do so. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 350-51 (1950); *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296 (1953); *In Matter of Motors Liquidation Company*, 829 F.3d 135, 158-59 (2d Cir. 2016).

### A.  Plaintiff Was a Known Creditor at the Time of Discharge

A key factor for determining the adequacy of notice of a potential creditor is whether the creditor is a "known creditor" to the debtor. A creditor that is "known" is entitled to actual notice

of the bankruptcy proceedings. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995).

If the creditor is "unknown," then notice by publication is sufficient. *Id.* at 345-46. It is the

debtor's perspective that determines whether a creditor is "known" or "unknown." A "known"

creditor is "either known or reasonably ascertainable by the debtor." *Id.* at 346 (citations

omitted). If the debtor knew or reasonably should have known about the claim, then due process

entitles potential claimants to actual notice of the bankruptcy proceedings. *Chemetron*, 72 F.3d at

345-46.

Defendants claim that Plaintiff was an "unknown" creditor fails. Although a "vast, open-

ended investigation" may not be required, due process requires a bankruptcy administrator to

investigate more than just the debtor's books and financial records. *Chemetron Corp.*, 72 F.3d at

346. "Reasonable diligence in ferreting out known creditors will, of course, vary in different

contexts . . . . A debtor is obligated, however, to undertake more than a cursory review of its

records and files to ascertain its known creditors. Known creditors are defined as creditors that a

debtor knew of, or should have known of, when serving notice of the bar date." *In re XO*

*Commc'ns, Inc.*, 301 B.R. 782, 793-94 (S.D.N.Y. 1995). Moreover, an agent or employee of a

corporation can impute corporate knowledge to a corporation. *See Turner Constr. Co., Inc. v.*

*Brian Trematore Plumbing & Heating, Inc.*, 2009 WL 3334823, at *4 (D.N.J. Oct. 13, 2009) ("It

is elementary law that the knowledge of an agent or employee within the sphere of his agency or

employment will be imputed to the corporation.") (quoting *In re Mifflin Corp.*, 123 F.2d 311,

315 (3d Cir. 1941)); *see also UCAR Int'l, Inc. v. Union Carbide Corp.*, No. 00-cv-1338, 2004

WL 137073, at *13 (S.D.N.Y. Jan. 26, 2004) (collecting cases supporting the proposition that

"[k]nowledge and actions of a corporation's employees and agents are generally imputed to the

corporation where the acts are performed on behalf of the corporation and are within the scope of

their authority."). There is an affirmative duty for debtors to provide notice to known creditors because without notice of a bankruptcy proceeding, a claimant does not have an opportunity to assert his claim. *Mullane*, 339 U.S. at 314.

The Complaint thoroughly alleges that NYMA had actual knowledge that Plaintiff was repeatedly beaten, sodomized, and raped during their tenure as a cadet, and had claims against NYMA. Plaintiff exhibited visible signs of abuse including a busted lip, bruises, and a limited range of motion which was noticed by NYMA staff. ¶¶ 54-61; 76. NYMA employees Forgione and Norris noticed the signs of abuse and discussed the abuse with Plaintiff. ¶¶ 70-73; 76-78; 80. Plaintiff complained to the principal, NYMA employee Austin, that they were being sexually abused on campus by the other students. ¶¶ 82-87. Austin reported the complaint to NYMA employee Alexander. ¶¶ 88-90. Alexander admitted that he was aware students were being abused on campus (¶¶ 92-93), but instead of intervening, slapped Plaintiff for "making up lies" about sexual abuse. ¶¶ 94-98. NYMA employee Romero questioned Plaintiff about the abuse. ¶¶ 109-110.  In April 1997, Forgione noticed an open gash Plaintiff sustained while being raped sent them to a physician employed by NYMA.  ¶¶ 112-125.

As alleged, NYMA was aware of Plaintiff's abuse. NYMA's employees routinely discussed the abuse with Plaintiff, Plaintiff reported sexual abuse to their principal, and NYMA responded by physically abusing Plaintiff for having the audacity to object to sexual abuse. Any reasonable investigation by NYMA, along with an examination of books and records, would have revealed Plaintiff suffered abuse during their time as a cadet. Nothing in Defendants motion suggests any such investigation even took place. Defendants position that the mere passage of time insulates them from exploring their knowledge of Plaintiff's claims is insufficient. This argument relies on factual disputes that cannot be determined at the pleading stage and require

discovery. Plaintiff is entitled to seek discovery to support their factual contentions. At

minimum, the Complaint sets forth facts that establish NYMA should have been aware of

Plaintiff's claims. If NYMA books and records do not reveal Plaintiff's claims, that only exhibits

a gross and inexcusable failure to document and/or report known instances of childhood sexual

abuse.

Plaintiff respectfully submits that this stage of litigation is too early to dismiss Plaintiff's

claims based solely on Defendants' conclusory assertion that Plaintiff was an unknown creditor.

Therefore, Defendants' motion to dismiss on bankruptcy grounds should fail.

### B.  NYMA's Form of Notice Was Constitutionally Insufficient

Even if Defendants were unaware of Plaintiff claims – which is in stark contrast to the

thoroughly pled allegations in the Complaint – the purported notice provided to Plaintiff was

constitutionally insufficient. *See Mullane*, 339 U.S. at 314 ("the notice must be of such nature as

reasonably to convey the required information"). If a debtor's records revealed the existence, but

not the identities, of persons with potential claims against the debtor, due process demands that

the nature of those claims be announced in the relevant notices. *Sweeney v. Alcon Laboratories*,

2021 WL 1546031 (2d. Cir. 2021). Beyond just a cursory review of their records, a debtor is

required to inquire its employees about potential liabilities. Since a debtor is obligated to disclose

all known potential liabilities, whether disputed or undisputed, contingent or non-contingent,

liquidated or unliquidated, a corporate debtor necessarily will need to ask its employees about

potential liabilities. *See e.g.,* Collier on Bankruptcy § 4-521[2][b] (15th Ed. Rev. 2011) ("The

fact that the debtor does not have complete knowledge of his or her own affairs will not excuse

the omission of creditors from the schedules."); *In re Motors Liquidation Co*, 829 F.3d 135, 160

(2d Cir. 2016).

Along with the specific knowledge of Plaintiff's claims as discussed *Supra,* Point II (A)*,* the Complaint amply pleads that NYMA was aware of other claims of physical and sexual abuse by cadets in their care. The Complaint details several other instances of child abuse suffered by cadets on NYMA's campus. ¶¶ 165-179; 185-204. As pled, NYMA was specifically advised of several of these claims of abuse. On at least two occasions preceding the bankruptcy, NYMA was sued for its negligence resulting in child abuse. ¶¶ 166; 175. NYMA was warned by local authorities that the frequent and egregious claims of child abuse and negligence could potentially expose them to criminal liability. ¶¶ 179. NYMA liabilities and culture of child abuse were publicized, including by the New York Times, during a slew of child abuse claims made through the media and in litigation. ¶¶ 176; 178. Finally, NYMA admitted through its press releases that the negative publicity caused by the series of abuse allegations was one of the driving factors in its economic decline preceding its bankruptcy. ¶¶ 182.

Accepting these factual allegations as true, as the Court must on a motion to dismiss, Defendants were on actual notice of a multitude of claims and allegations of physical and child abuse. Plaintiff expects that discovery will expose countless other examples of actual notice of child abuse on their campus. At a minimum, NYMA reasonably should have been aware of their liabilities to claims of the same nature as Plaintiff's, and because of this knowledge, due process demanded this information be included in the publication notice. General notice by publication is not sufficient where a debtor has failed to disclose its required obligations. *See Grossman's*, 607 F.3d at 127 ("Whether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case . . . ."); *see also DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 153 (2d Cir. 2014) (adequacy of notice "turns on what the debtor . . . knew about the claim or, with reasonable diligence, should have known"). The

Second Circuit provides clear guidance as to why transparency and due process is so critical to

the bankruptcy process:

> If a debtor reveals in bankruptcy the claims against it and provides potential claimants notice consistent with due process of law, then the Code affords vast protections. Both § 1141(c) and § 363(f) permit "free and clear" provisions that act as liability shield. These provisions provide enormous incentives for a struggling company to be forthright. ***But if a debtor does not reveal claims that it is aware of, then bankruptcy law cannot protect it.***

*Motors Liquidation*, 829 F.3d at 159 (emphasis added). Despite Defendants admitted knowledge

that their negligence exposed them to liability for claims of child abuse, their purported

publication conveniently neglects to mention this information:

> NOTICE IS HEREBY GIVEN THAT the Bankruptcy Court has fixed December 29, 2015 at 4:00 p.m. (EST) as the last date (the "General Bar Date") by which all persons or entities that assert a claim (as defined in 11 U.S.C. § 101(5)) against the Debtor that arose on or prior to March 3, 2015 shall file a Proof of Claim so that it is actually received by the Clerk of the Bankruptcy Court, 355 Main Street, Poughkeepsie, New York, 12601, either by mail, hand-delivery, overnight carrier, or electronic case filing no later than 4:00 p.m. on the General Bar Date. Any holder of a Proof of Claim filed after the General Bar Date will be barred from asserting such claim against the Debtor.

(MTD at Ex. F). It is respectfully submitted that this notice is constitutionally insufficient.

According to Defendants' account, they published a single notice of the proceeding on December

8, 2015, in the *Poughkeepsie Journal*, a small publication with a local readership, and provided

all potential creditors three weeks to submit a Proof of Claim. (MTD at p. 15; Ex. F) Critically,

even though NYMA was aware of its liability for negligence and child abuse, the publication

does not even try to convey that information. As pled, NYMA was repeatedly informed of and

admitted it had knowledge of these liabilities prior to filing for bankruptcy. Had NYMA publicly

disclosed this information consistent with constitutional due process, Plaintiff, and many other

victims of child abuse would have had the opportunity to file their respective claims. Therefore,

Defendants' motion to dismiss on bankruptcy grounds should fail.

### III.    PLAINTIFF'S CLAIMS DO NOT CONSTITUTE PRE-PETITION CLAIMS

Pursuant to 11 U.S.C. § 101(5)(A), a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." While Congress included an expansive definition of the term "claim", the definition is not infinite and the existence of a valid claim depends on (1) whether the claimant possessed a right to payment and (2) whether that right arose before the filing of the petition. *Pension Ben. Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009). In making this determination, the courts look to the "substantive non-bankruptcy law that gives rise to the debtor's obligation." *Id*. For example, where there is no legal relationship defined at the time of petition, that is, where the statute imposing the liability has not been enacted, the second circuit has found that "it would be impossible to find even the remotest right to payment." *In re Chateaugay Corp.*, 154 B.R. 416, 419 (S.D.N.Y. 1993). "[T]he standard rule is that a claim accrues when the plaintiff has a complete and present cause of action," *Id.* (*quoting Wallace v. Kato*, 549 U.S. 384, 388 (2007)), which exists where "the elements necessary to commence the action under state law [are] present as of the date of [the] bankruptcy petition," *Id.* at 635.

In *DMJ Assocs., L.L.C. v. Capasso*, 565 B.R. 27 (E.D.N.Y. 2016), the court was tasked with deciding a similar question present here: whether a "claim" without a present cause of action constitutes a pre-petition claim. In that case, a set of third-party plaintiffs ("TPPs") asserted claims against Revere Copper Products, Inc. ("RCPI") and other third-party defendants under the Compensation and Liability Act of 1980 ("CERCLA") § 107(a). RCPI moved for summary judgment arguing TPPs claims against it constituted pre-petition claims which were discharged by their corporate predecessor's bankruptcy and confirmation order. The court denied

15

the motion, ruling that even though the conduct complained of occurred before the bankruptcy, TPPs did not have a private right of action under CERCLA until a Supreme Court precedent which *postdated* the confirmation order. In other words, the court determined that because TPPs did not have authority to bring suit under CERCLA at the time the bankruptcy petition was filed, there existed no "right to payment" and TTPs claims could not be considered as pre-petition claims for bankruptcy purposes.

Similar here, at the time the NYMA filed their bankruptcy petition, Plaintiff did not have authority to file or a present cause of action against NYMA. Plaintiff did not have a "right to payment" on the claims alleged in the Complaint. The statute of limitations for their claims had passed, and any civil action or proof of claim would have been dismissed as time-barred. Plaintiff did not have a legally assertable non-bankruptcy claim until those claims were revived by the CVA. As such, Plaintiff's right to payment did not arise until the CVA went into effect on August 14, 2019, at that time, Plaintiff had a viable claim against the NYMA and the authority to seek redress in the court system. Accordingly, Plaintiff's claims cannot constitute pre-petition claims and Defendants' motion to dismiss on bankruptcy grounds should fail.

## IV.    PLAINTIFF HAS SUFFICIENTLY ALLEGED CAUSES OF ACTION AGAINST RCNC

### A.  Defendants' Statement of Facts Pertaining to RCNC Should Be Disregarded

Throughout Defendants' entire motion, but particularly in those portions discussing RCNC, Defendants' assert factual allegations which cannot be considered by this Court. As discussed *supra*, absent conversion of the motion to one of summary judgment, a 12(b)(6) court may not rely on factual allegations contained in memoranda of law. *Friedl*, 210 F.3d at 83; *See also Miglino v. Bally Total Fitness of Greater N.Y., Inc.*, 20 N.Y.3d 342, 351 (2013) (A plaintiff

"is not obligated to come forward with claim-sustaining proof in response to a motion to dismiss unless the court treats the motion as one for summary judgment and so advises the parties."). Defendants include a statement of facts under the subheading "Background on Research Center" (MTD at p. 22-23) which must be disregarded. Defendants insert additional unestablished fact claims throughout their arguments, including purported lists of trustees (MTD at p. 29) that must also be disregarded. In support of these purported facts, Defendants append extrinsic documents – specifically exhibits H, I, J, K, L, and N – that cannot be considered in this motion. As discussed *supra*, Point I, this circuit applies a narrow exception for introducing extrinsic material on a 12(b)(6) motion and these documents are neither referenced nor integral to the Complaint. Defendants do not state why these exhibits should be considered on this motion, and merely attempt to shoehorn them under Defendants' expansive and ambiguous classification of bankruptcy related documents. Yet these documents have not been authenticated and it is not clear if they were even part of the bankruptcy proceeding. Plaintiff has not had a fair and full opportunity to obtain discovery from the Defendants regarding these issues or documents. The scope of a motion under 12(b)(6) is properly within the four corners of the Complaint.

### B.  RSCS is Liable for The Unlawful Conduct of its Predecessor

In New York, exceptions to the general rule that the an entity purchasing the assets of another is not liable for the seller's debts and liabilities exist when "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 702 (2d Cir. 2009); *see Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45 (N.Y. 1983). "Thus, for example, 'when a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the

predecessor's operations, the successor may be held to have assumed its predecessor's . . . liabilities, notwithstanding the traditional rule.'" *Aguas Lenders Recovery Grp.*, 585 F.3d at 702 (2d Cir. 2009). Courts often view the continuation doctrine in tandem with the de facto merger doctrine as they are "so similar that they may be considered a single exception." *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)

In *Gould v. ILKB LLC*, the Court noted facts which could establish successor liability under the de facto merger / continuation doctrines, including if the buyer (i) purchased almost all of the predecessor corporation's fixed assets and intangibles, (ii) assumed a name nearly identical to that of the predecessor corporation, (iii) retained at least one officer from the predecessor corporation, and (iv) continues the same business operations. 2:20-cv-5154 (DRH) (JMW), at *27-28 (E.D.N.Y. June 9, 2022) (*citing Burgos v. Pulse Combustion, Inc.,* 227 A.D.2d 295 (1st Dept. 1996)). Here, Defendants admit in their MTD that RSNC "purchased substantially all" of NYMA's assets as part of the transfer. MTD at p. 29. NYMA has maintained the same name and has continued the same business operations: a coeducational military boarding school. These services are provided to children on the same property Plaintiff was abused. This is sufficient to establish successor liability.

Defendants primarily assert Plaintiff cannot show a de facto merger because the board of trustees changed post-sale. However, as discussed above, this is an improperly asserted factual allegation which must be disregarded. Plaintiff is entitled to discovery to determine the continuity of ownership as well as management, personnel, and other indicia of successor liability. Indeed, "[s]uccessor liability is a 'highly fact-specific' inquiry that, on the 'present record, cannot be resolved.'" *Gould*, 2:20-cv-5154 (DRH) (JMW), at *28; *Aguas Lenders Recovery Grp.*, 585 F.3d at 703.

### C.  Whether RSCS is a "Good Faith Purchaser" is a Fact Inquiry

Defendants also argue dismissal of claims against RSNC on the basis those claims are precluded under § 363(m) of the Bankruptcy Code. This is another fact-specific inquiry that cannot be determined by the current record.

Defendants cite *In re Lehman Bros. Holding Inc.*, for the proposition that § 363 (m) protects good faith purchasers in bankruptcy sales from future litigation stemming from their predecessors debts and liabilities. First, *Lear* is inapposite because it was decided on summary judgment. Second, Defendants argument here, again, relies on facts which are in dispute and unestablished. Specifically, it remains a question of fact whether RSNC was a "good faith" purchaser under § 363(m).

The "good-faith purchaser" determination "is a mixed question of law and fact" because the inquiry must examine the conduct of the buyer. "*In re Lehman Bros. Holdings, Inc.*, 415 B.R. at 84 (*quoting Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380 (2d Cir. 1997)). While the Bankruptcy Code does not define "good faith purchaser," the Second Circuit has "adopted the traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 83-84 (S.D.N.Y. 2009) (quoting *In re Gucci*, 126 F.3d 380 at 390).  In determining whether a purchaser acted in good faith, courts look to "the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *In re Gucci*, 126 F.3d at 390.

When making this determination the Court must consider whether the buyer's knowledge of potential adverse claims of the seller precludes a finding that the buyer was a "good faith" purchaser under § 363(m). "Indeed, the Second Circuit has explained that a good faith purchaser

is 'one who purchases the assets for value, in good faith, *and without notice of adverse claims*. *In re Cooper*, 592 B.R. 469, 482 (S.D.N.Y. 2018) (emphasis original); *In re Gucci*, 126 F.3d at 390. The same factual allegations discussed *supra*, Point II (B), imputing constructive knowledge on the part of NYMA of its own liability serves to impute constructive knowledge to RCNC as well. Indeed, prior to the sale, NYMA had already been named as defendant in several civil cases for negligence and child abuse, had received public media backlash for those same allegations, and had admitted in their public statements they were aware of the child abuse allegations. ¶¶ 166; 175; 176; 178; 182. Plaintiff proffers that if permitted to proceed with discovery, Plaintiff will seek documents showing that had RCNC conducted a reasonable due diligence investigation prior to the sale, such investigation would have exposed these liabilities. As such, this Court should deny Defendants' motion and allow Plaintiff to proceed with discovery to determine RCNC's knowledge of NYMA's adverse claims to uncover whether they qualify as a good faith purchaser for the purposes of § 363(m).

## V.   PURSUANT TO 11 U.S.C. § 524(e), PLAINTIFF SHOULD BE PERMITTED TO PROCEED AGAINST NYMA TO ESTABLISH LIABILITY AS A PREREQUISITE TO RECOVERY FROM INSURERS

11 U.S.C. § 524(e) states that the discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt. In the Second Circuit, the general rule is that "§ 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer," and thus "permits [a plaintiff] to continue her suit against [a discharged defendant] to establish liability as a precondition to recovery from [the defendant's] liability insurer." *Green v. Welsh*, 956 F.2d 30, 35 (2d. Cir. 1992). Discharge injunction does not bar suit by tort claimants against a discharged debtor for the sole purpose of

recovering against an insurer. *Id.*, *see also In Re Jet Florida Systems, Inc.* 883 F.2d 970, 973 (11th Cir. 1989); *In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989).

In the present case, should this Court determine that the Plaintiff's claim was discharged and enjoined, Plaintiff should nonetheless be able to proceed against NYMA for the sole purpose of establishing liability as a prerequisite to recovering from NYMA's insurers. NYMA's assets that were made part of its Chapter 11 case did not include any insurance assets for claims of sexual abuse. The CVA has revived Plaintiff's claim for childhood rape and abuse, and Defendants' Chapter 11 bankruptcy does not preclude Plaintiff from pursuing a claim against the insurance assets. As a result, if the Court finds Plaintiff is precluded from bringing action against NYMA, this Court should allow Plaintiff to proceed for the sole purpose of establishing liability. Additionally, Plaintiff should be permitted discovery to determine the existence and applicability of insurance and/or other assets that were not discharged in the bankruptcy.

## VI.    PLAINTIFF'S NYSHRL CAUSES OF ACTION ARE AMPLY PLED AND REVIVED BY THE CVA[5]

Defendants' argument that Plaintiff's causes of action arising from the NYSHRL should be dismissed because Plaintiff's NYSHRL claims were not revived by the CVA is completely unsupported and lacks merit. Defendants assert claims revived by the CVA "must constitute a violat[ion] of the penal law" and "discrimination and retaliation claims are not violations of the penal law." MTD at p. 34. In apparent attempt to support this proposition, Defendants cite a string of inapplicable cases law[6]. None of the cited cases reach the same conclusion that Defendants seek in this action. Indeed, none of the cases cited by Defendants even discuss the

---

[5] Plaintiff opts to withdraw their first and second causes of action (Discrimination and Retaliation in Violation of Title IX). Although these federal claims are withdrawn, this Court has diversity jurisdiction over this action. ¶ 8.
[6] *Coe v. Regan*, 19-CV-05327(ENV)(VMS) (E.D.N.Y. January 28, 2022); *Kane v. Mount Pleasant Cent. Sch. Dist.*, 20 CIVIL 7936 (CS) (S.D.N.Y. Nov. 3, 2021); *FL v. Hilton Cent. Sch. Dist.*, 6:21-CV-06551-FPG (W.D.N.Y. May 25, 2022); *BL Doe 3 v. The Female Acad. of Sacred Heart*, 158 N.Y.S.3d 474 (N.Y. App. Div. 2021)

NYSHRL. Each case discusses whether CVA has any applicability to federal claims which borrow the general or residual statute of limitations for torts. Of course, these rulings application to the NYSHRL – which is not a federal statute – is unavailing. This is particularly true in *Coe*, where the opinion clearly states it is written "without deciding [whether] CVA even applies to gender discrimination claims." Defendants attempt to conflate these narrow rulings with the issues present here. This is a red herring, and Defendants attempt to obfuscate the Court by citing rules that do not exist should be dismissed out of hand.

The CVA included a broad revival provision which revived Plaintiff's NYSHRL claims. Specifically, the CVA revival provision provides, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . ***every civil claim or cause of action*** brought against ***any party alleging intentional or negligent acts or omission by a person for*** . . .***injury or condition suffered as a result of conduct which would constitute a sexual offense*** as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived.

N.Y. C.P.L.R. § 214-g (McKinney) (emphasis added). The Act requires "revived claims to be brought not earlier than six months after and not later than one year and six months after the effective date of the law." *Caldwell v. City of New York*, No. 21 Civ. 6560, 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) (citing N.Y. C.P.L.R. § 214-g). The basis for revival under the CVA is that the complaint be timely filed and plausibly pleads a civil claim seeking redress for acts which resulted in injury to a child from *conduct which would constitute a sexual offence*. Defendants do not dispute that Plaintiff was a minor during the sexual abuse and that the action was filed within the window established by the statute. The only factor left for decision is

whether the injury or condition suffered by Plaintiff was the result of conduct which constitute a sexual offense.

A plaintiff can bring a claim of discrimination for an unmitigated hostile education environment. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) ("[A] Title IX hostile education environment claim is governed by traditional Title VII hostile environment jurisprudence.") (internal quotations omitted). A plaintiff can establish this claim by pleading factual allegations that the environment was "so severe, pervasive, and objectively offensive that it effectively bar[red] . . . access to an educational opportunity or benefit." *Id*. at 89 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). Discrimination claims under NYSHRL do not share the same stringent standard as it's federal counterparts. In 2019, the New York State Legislature amended its Human Rights Law specifically to eliminate the requirement that a hostile environment be "severe or pervasive" to be actionable. Rather, "[p]laintiffs bringing discrimination claims under New York State Human Rights Law, alleging disparate impact, must only show that the… pattern or practice subjected them to an injurious discriminatory effect." *Rocco v. Goldberg (In re Goldberg)*, 487 B.R. 112 (Bankr. E.D.N.Y. 2013).

Here, Plaintiff alleges that they were repeatedly sodomized and raped by other students while a cadet at NYMA, creating a gender-based hostile educational environment. Plaintiff further alleges that school officials had actual knowledge of the abuse but failed to intervene to stop it. In fact, instead of helping, Defendants retaliated against Plaintiff by physical reprimand for making complaints of sexual abuse and harassment. As alleged, the injuries Plaintiff suffered by NYMA's discrimination and retaliation where the result of conduct which constitutes sexual offenses under the penal law, putting the alleged wrongful conduct within the ambit of CVA.

Because Plaintiff's claims of discrimination and retaliation are amply pled and fall within the revival provision of the CVA Plaintiff's NYSHRL claims must survive this motion.

## VII.    PLAINTIFF ADEQUATELY PLED THEIR STATUS AS AN "ABUSED CHILD" AND IS ENTITLED TO RELIEF FOR DEFENDANTS' FAILURE TO REPORT ABUSE

Plaintiff's seventh cause of action is based on NYMA's failure to report abuse pursuant to N.Y. Soc. Serv. Law §§ 413 and 420. Defendants argue the Complaint does not allege Plaintiff was an "abused child" under the relevant statutes. This is inaccurate.

Pursuant to § 413, school officials, which include but are not limited to schoolteachers, school guidance counselors, school psychologists, school social workers, school nurses, school administrators or other school personnel required to hold a teaching or administrative license or certificate, are required to report "when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." Pursuant to § 420(2) "[a]ny person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure." "An injured child may assert a cause of action for damages under Social Services Law § 420 for alleged violations of sections 413 and 417, which were enacted to protect children from physical abuse." *Young v. Campbell*, 87 A.D.3d 692 (N.Y. App. Div. 2011).

Defendants cite *Hanson v. Hicksville Union Free Sch. Dist.*, 209 A.D.3d 629 (N.Y. App. Div. 2022) in support of the proposition that during the abuse described in the Complaint, Plaintiff was not an "abused child" as defined by applicable statutes. Defendants' argument is unavailing. The case at bar is factually distinct and clearly distinguishable to *Hanson*. In *Hanson*,

the court looked at the definition of "abused child" provided in Family Court Act § 1012(e), which states, in pertinent part:

> (e) "Abused child" means a child less than eighteen years of age whose parent or other person legally responsible for his care (i) inflicts or allows to be inflicted upon such child physical injury by other than accidental means … (ii) creates or allows to be created a substantial risk of physical injury to such child by other than accidental means… [and/or] (iii) commits, or allows to be committed an offense against such child defined in article one hundred thirty of the penal law;

In examining the language above, the *Hanson* court determined that the plaintiff was not an abused child because their abuser – their schoolteacher – was not a "parent or other person legally responsible" for their care. Family Court Act § 1012(g) defines "personal legally responsible" as the child's "custodian, guardian, [or] any other person responsible for the child care at the relevant time."

Here, as alleged, Plaintiff was a student at a sleep-away boarding school, under the sole custody, control, and care of NYMA. ¶¶ 10-14; 35. NYMA hired staff responsible for supervising and providing care to the students who lived on their campus and that staff absconded their responsibilities, resulting in physical harm to the children. ¶¶ 15-19. Accepting these allegations as true, NYMA was "legally responsible" for Plaintiff and allowed Plaintiff to sustain physical injuries by way of repeated sodomization and rape. Because persons legally responsible for Plaintiff allowed them to be abused, Plaintiff was an "abused child" under the relevant statutes. As alleged, members of NYMA's staff were aware Plaintiff was abused yet failed to report said abuse, in violation of their statutory mandate. ¶¶ 70-73;76-78; 80; 82-87; 88-90; 100; 109-110; 119-125. Therefore, Plaintiff's claims of statutory failure to report must survive this motion.

## CONCLUSION

Plaintiff respectfully requests that Defendants' application be denied in its entirety.