UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GILBERT SEGAL JR.,

                            Plaintiff,          Case No.: 21-CV-6872 (VB)

           -against-

NEW YORK MILITARY ACADEMY (ALL ENTITIES
INCLUDING, BUT NOT LIMITED TO INSURANCE
REPRESENTATIVES, ETC); THE NATIONAL
ASSOCIATION OF INDEPENDENT SCHOOLS; THE
REEARCH CENTER ON NATURAL CONSERVATION,
INC.; ASSOCIATION OF MILITARY COLLEGES
AND SCHOOLS OF THE UNITED STATES; JOHN DOE
1-8; JROTC ARMY,

                       Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN REPLY

MULHOLLAND MINION DAVEY
McNIFF & BEYRER
*Attorneys for Defendants New York Military*
*Academy and Research Center on Natural*
*Conservation, Inc.*
374 Hillside Avenue
Williston Park, New York 11596

By: Matthew Williams, Esq.

# TABLE OF AUTHORITIES

Cases:                                                                    Page(s):

In re Anderson,
    884 F.3d at 389 (2nd Circ. 2018) ...........................................................7,9

In Re Brooks Fashion Stores,
    124 B.R. 436 (Bankr. S.D.N.Y. 1991)...............................................4,5

In Re Drexel Burnham Lambert Grp. Inc.,
    151 B.R. 674 (Bankr. S.D.N.Y. 1993)...............................................4,6

In re Golden,
    587 BR 414, 426 (Bankr. E.D.N.Y. 2018) ........................................7,9

Hanson v. Hicksville Union Free School District,
    209 A.D.3d 629 (2nd Dept. 2022) .........................................................11

Hotel Employees & Restaurant Employees Union, Local 100
of New York, N.Y. & Vicinity, AFL CIO v. City of New York
Department of Parks & Recreation,
    311 F.3d 534 (2nd Cir. 2002) ...................................................................3

In re Lear Corp.,
    No. 09-14326 ALG, 2012 WL 443951,
    at *4 (Bankr. S.D.N.Y. Feb. 10, 2012) ..................................................8

In re Mazzeo (Mazzeo v. United States),
    131 F.3d 295, 303 (2d Cir.1997) ...........................................................9

Midland Funding, LLC v Johnson,
    137 S. Ct 1407, 1412, (2017)..................................................................7

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)................................................................................4

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2nd Cir. 1998) ...................................................................3

In re R.H. Macy & Co., Inc.,
    236 BR 583, 589 (Bankr. S.D.N.Y. 1999),
    affirmed, 283 BR 140 (S.D.N.Y. 2002)..................................................9

Cases:                                                                                          Page(s):

Texaco Inc. v. Sanders (In re Texaco, Inc.),
        182 B.R. 937 (Bankr. S.D.N.Y.1995) .......................................................................6

In Re U.S.H. Corp.,
        223 B.R. 654 (Bankr. S.D.N.Y. 1998) .................................................................5,6


Other Authorities:

H.R.Rep. No. 95-595, at 309 (1977) .......................................................................9

S. Rep. No. 95-989, at 21 (1978). Id. *589 .............................................................9

11 U.S.C. § 101(5)(A) (1994) ...........................................................................7,8,9

11 U.S.C, §502(b)(1) 7 .........................................................................................7

ii

This Memorandum of Law in Reply is submitted in reply to plaintiff's opposition and in further support of the undersigned's motion to dismiss. The undersigned represents the defendants, NEW YORK MILITARY ACADEMY ("NYMA") and the RESEARCH CENTER ON NATURAL CONSERVATION, INC. ("RCNC"). Defendants would note that we feel that we are unable to provide a full and adequate rebuttal to the plaintiff's opposition papers given our confinement to ten pages of reply pursuant to practice rules. Therefore, to the extent certain matters are not addressed or countered, it is not a concession but rather an inability to adequately address the matter.

The defendants submitted a number of documents whose authenticity cannot be questioned. These are documents relating to NYMA's bankruptcy proceeding. If the Court were not inclined to determine the validity of NYMA's bankruptcy at this stage, then there would be no point to filing bankruptcy whatsoever. Bankruptcy is designed to give debtors a fresh start. Bankruptcy discharges debts, including personal injury claims, in order to provide that fresh start. If the Court cannot consider the legitimacy of the bankruptcy, then any person or organization who ever filed bankruptcy in the past would be susceptible to litigation years and decades after the adjudication of bankruptcy. A person or company adjudicated bankrupt would be forced to defend claims and spend thousands in dollars in litigation fees and costs to defend lawsuits that the bankruptcy was designed to avoid.

Plaintiff cannot argue that NYMA did not avail itself to the Bankruptcy court nearly a decade ago. Instead, plaintiff argues that this Court should clearly overlook that fact when determining whether the plaintiff has a valid cause of action.

When contemplating a dismissal pursuant to Rule 12 , the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

The defendants submit that the bankruptcy documents are integral to this lawsuit, as the adjudication of bankruptcy necessarily prohibits litigation from years and decades past.

NYMA's bankruptcy is a matter of public record. Plaintiff is, and has been, welcome to review all of the filings in the NYMA bankruptcy case via the electronic court docket. Furthermore, the Court can take judicial notice of NYMA's prior bankruptcy along with those documents in support as they are not subject to dispute. See Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Department of Parks & Recreation, 311 F.3d 534 (2nd Cir. 2002). Courts may rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2nd Cir. 1998).

The fact that the plaintiff's claims arise out of alleged sexual abuse has no bearing on the bankruptcy. Bankruptcy is designed to provide a fresh start regardless of what type of claims are asserted against the debtor. A debtor does not get preference because a claim is of one specific type as compared to another. It matters not if litigation involves a trip and fall, breach of contract or intentional tort, bankruptcy is designed to discharge all claims. To ignore this well-established principal would cause a dangerous ripple effect. Instead of carefully reviewing NYMA's

bankruptcy, the plaintiff has filed this meritless complaint and seeks the Court to ignore well-established principles of bankruptcy so plaintiff can pursue this lawsuit.

The line between known and unknown creditors is not always obvious or easy to draw. Reasonable diligence does not require "impracticable and extended searches ... in the name of due process," See <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950) and a debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." See <u>In Re Brooks Fashion Stores</u>, 124 B.R. 436 (Bankr. S.D.N.Y. 1991).

The plaintiff's argument regarding due process in this case amounts to NYMA having to notify every student, teacher, guest, visitor, administrator…quite frankly anyone who ever set foot on NYMA premises would have to be notified about the NYMA bankruptcy if they had a potential claim no matter how much time transpired between the time of the alleged claim and the bankruptcy.

Beyond these allegations that the plaintiff complained to certain NYMA personnel, there are no allegations that the plaintiff ever spoke to anyone at NYMA regarding the potential of asserting a claim or lawsuit against the school at any point up until the present day. How then would NYMA know to provide Segal actual notice nearly twenty years after his attendance at NYMA?

The requisite search focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are "reasonably" ascertained and therefore "known" creditors. See <u>In Re Drexel Burnham Lambert Grp. Inc.</u>, 151 B.R. 674 (Bankr. S.D.N.Y. 1993).

Reasonable diligence does not require impracticable and extended searches in the name of due process. See In RE U.S.H. Corp., 223 B.R. 654 (Bankr. S.D.N.Y. 1998). A creditor is unknown if their interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to the knowledge of the debtor. See Mullane at 339. Although a debtor is obligated to ascertain reasonably the identity of its creditors by reviewing its own books and records, a debtor is not required to search elsewhere for those who might have been injured. See In Re U.S.H. at 659. It is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it. See In Re Brooks Fashion Stores, Inc., 124 B.R. 436 (Bankr. S.D.N.Y. 1991)

To side with the plaintiff would therefore require NYMA to go beyond its well-established duty under bankruptcy law. It would require NYMA to search out every conceivable or possible creditor, to review the student files and personnel files of every former student and employee to determine whether such a person potentially had any sort of claim at any time in the past prior to NYMA's bankruptcy adjudication. It would also require the impossible task of tracking down every person who ever set foot on school grounds to determine whether they had a potential claim.

Plaintiff's complaint is devoid of any allegation that anyone who worked at NYMA in and around the time it filed for bankruptcy knew or should have known of any of the allegations made by plaintiff. It is devoid of allegations the any alleged claim the plaintiff may have had was indicated in the NYMA financial books and records. The complaint is devoid of any allegation that the plaintiff put NYMA on notice of a claim or lawsuit. Given this lack of information, there would be no reason for NYMA to have actual notice that plaintiff was a potential creditor at the time the bankruptcy was initiated. Typically, a known creditor will engage in some

communication with a debtor concerning the existence of the creditor's claim or communicate some intention of making a claim. See In Re Drexel at 681.

Although a debtor is obligated to ascertain reasonably the identity of its creditors by reviewing its own books and records, "a debtor is not required to search elsewhere for those who might have been injured." Texaco Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937 (Bankr. S.D.N.Y.1995). Further, "Debtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates." In re U.S.H. Corp. of New York, 223 B.R. 654 (Bankr. S.D.N.Y.1998). Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim.

At the time of NYMA's bankruptcy Plaintiff was an unknown creditor to which Due Process required Notice by Publication. Plaintiff cannot assert that Plaintiff was entitled to a higher standard than what Bankruptcy law requires, nor can Plaintiff establish that twenty years after the alleged conduct giving rise to Plaintiff's alleged claim that NYMA should have been aware of same which would have entitled Plaintiff to a heightened notice standard.

The Confirmation Order, a prior exhibit, made determinations pertaining to the discharge of claims.

Section twenty-two explicitly stated that a claim based upon any act that occurred prior to NYMA's bankruptcy, whether or not the facts or legal bases therefor were known or existed prior to the Effective date are discharged. At the time of NYMA's bankruptcy, the plaintiff would have been time-barred from bringing a lawsuit against NYMA. The statute of limitations would have expired approximately ten years prior to NYMA's bankruptcy.

6

However, as the Confirmation Order makes clear, any pre-petition claims, such as Plaintiff's alleged claim which allegedly took place twenty years prior to NYMA's bankruptcy, are discharged irrespective of the fact that the legal basis for the claim did not exist. Although the legal basis for Plaintiff's alleged claim under the CVA did not exist at the time of NYMA's bankruptcy, as the CVA was not yet in existence, the Order explicitly states that such a claim was in fact discharged, irrespective of any assertion that only claims that existed at the time of NYMA bankruptcy could have been discharged.

Discharging claims based upon pre-petition conduct, irrespective of whether the legal basis to file a lawsuit based on the conduct existed, is consistent with bankruptcy's purpose, which is to provide the debtor [NYMA] with a fresh start. *See* generally <u>In re Golden</u>, 587 BR 414, 426 (Bankr. E.D.N.Y. 2018) *citing* <u>In re Anderson</u>, 884 F.3d at 389 (2nd Circ. 2018). If a debtor, such as NYMA, could be subject to claims arising pre-petition, following a change in law, this would drastically hinder NYMA's as well as all debtor's ability to have the "fresh start" intended.

Pursuant to Section Number twenty-three and twenty-four of the Confirmation Order, the Bankruptcy Court ordered those claims, such as Plaintiff's, were in fact discharged, and as a result, Plaintiff is permanently enjoined from commencing any action against the debtor NYMA.

As the Supreme Court has held, the running of the statute of limitations period constitutes an "affirmative defense", a "defense the debtor is to assert after a creditor makes a claim". The law has long treated unenforceability of a claim (due to the expiration of the limitations period) as an affirmative defense. <u>Midland Funding, LLC v Johnson</u>, 137 S. Ct 1407, 1412, (2017).

"Section 502(b)(1) of the Code, for example, says that, if a "claim" is "unenforceable," it will be disallowed. It does not say that an "unenforceable" claim is not a "claim."" <u>Id.</u> 1412. Similarly, § 101(5)(A) says that a "claim" is a "right to payment," "whether or not such right is ...

7

fixed, *contingent*, ... [or] *disputed*." If a contingency does not arise, or if a claimant loses a dispute, then the claim is unenforceable. Yet this section makes clear that the unenforceable claim is nonetheless a "right to payment," hence a "claim," as the Code uses those terms." Id. 1412. Accordingly, "If a "claim" is "unenforceable" it will be disallowed, not that it is not a claim". Id.

Contrary to Plaintiff's position that Plaintiff did not have a claim until the CVA was codified in 2019 is inaccurate. Plaintiff did in fact have an alleged "claim" which Plaintiff could have asserted or put NYMA on notice of during the pendency of NYMA's bankruptcy. If Plaintiff would have asserted this alleged claim, it would have been NYMA's duty to raise appropriate affirmative defenses, or disallow the claim, as it does with other persons or entities that filed claims in NYMA's bankruptcy.

In Plaintiff's opposition to NYMA's motion to dismiss, Plaintiff asserts that the publication notice by NYMA in the Poughkeepsie Journal was constitutionally insufficient. It is important to note that the Bankruptcy Court order of December 4, 2015, ordered that Notice by Publication, by means of publishing an advertisement in the Poughkeepsie Journal, was deemed sufficient. Plaintiff's attack on the sufficiency of publishing the notice in the Poughkeepsie Journal is without merit as the Bankruptcy Court determined based upon the facts of NYMA's bankruptcy case, including the known and potential unknown creditors that such notice by publication in the Poughkeepsie Journal constituted sufficient notice for potential unknown creditors at the time of NYMA's bankruptcy in 2015.

To determine if an individual or entity has a pre-petition "claim" the Bankruptcy Court looks at the following criteria (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition. In re Lear Corp., No. 09-14326 ALG, 2012 WL 443951, at *4 (Bankr. S.D.N.Y. Feb. 10, 2012). Section 101(5)(A) of the Bankruptcy

Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, *unmatured, disputed,* undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A) (1994) (emphasis added). In re R.H. Macy & Co., Inc., 236 BR 583, 589 (Bankr. S.D.N.Y. 1999), affirmed, 283 BR 140 (S.D.N.Y. 2002).

"Congress altered the definition of "claim" when it enacted the Bankruptcy Code. In explaining the intended definition of "claim" under the Bankruptcy Code, the House and Senate Reports provide "[b]y this broadest possible definition [of claim] ... all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."" H.R.Rep. No. 95–595, at 309 (1977) S. Rep. No. 95-989, at 21 (1978). Id. *589. As the Second Circuit observed, "the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the [Bankruptcy] Code," and "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the [Bankruptcy] Code." In re Golden, 587 BR 414, 426 (Bankr. E.D.N.Y. 2018) *citing* In re Anderson, 884 F.3d at 389 (2nd Circ. 2018).

As "contingent and unmatured rights of payment are "claims" under the Bankruptcy Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Bankruptcy Code." Id. *589. "A contingent claim within the meaning of section 101(5) is a debt that "does not become an obligation until the occurrence of a future event but is noncontingent when all of the events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." Id. *589 *citing* In re Mazzeo (Mazzeo v. United States), 131 F.3d 295, 303 (2d Cir.1997).

Plaintiff had a right to payment, which arose prior to NYMA's petition for bankruptcy and this Court should find that Plaintiff had a pre-petition claim. Therefore, Plaintiff should be enjoined from commencing this action, as contrary to Plaintiff's position, Plaintiff had a right to sue under non-bankruptcy law for the alleged conduct that forms this basis for this lawsuit.

It is important to note that the purpose of the Bankruptcy code is to deal with all the obligations of the debtor [NYMA], no matter how contingent or remote so that the Bankruptcy's purpose can be accomplished which is give the debtor [NYMA] a "fresh start". As the Confirmation Order makes clear, claims based upon an activity that occurred pre-petition (such as here), whether or not such holder has filed a proof of claim and whether or not the facts or legal bases therefor were known or existed prior to the effective date were discharged.

As discussed in the Injunction section of the Confirmation Order "...any Person or Entity who has held, holds, or may hold Claims, and all other parties- in-interest, along with their respective present or former employees, agents, officer, directors, principals, representatives, and affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor, the Reorganized Debtor, or property or interest in property of the Debtor or Reorganized Debtor...".

Discharge of these claims is consistent with the Bankruptcy's Court's purpose which is to provide debtors [such as NYMA] with a fresh start after bankruptcy and to deal with all possible claims of NYMA no matter how contingent or remote. If debtors, such as NYMA, would possibly become liable for claims based on conduct which occurred pre-petition, each time a change in the law occurred, this would result in severe prejudice to debtors, such as NYMA, and would severely

10

hinder the ability for debtors, such as NYMA, to get a fresh start and ensure the finality of a debtor's bankruptcy, which are the core purposes of the Bankruptcy Code.

Defendants reiterate their position regarding why specific causes of action should be dismissed. Conveniently, the plaintiff agreed to dismiss there inapplicable causes of action for discrimination and retaliation pursuant to Title IX but refused to do so for those same claims arising under NYSHRL. Regardless of any voluntary dismissal of causes of action, the analysis is the same when addressing why NYSHRL claims are not revived by the CVA in the same way that Title IX claims were not revived. Claims regarding discrimination and retaliation do not necessarily implicate allegations of sexual abuse and can, in fact, encompass many different fact patterns which have absolutely nothing to do with allegations of sexual abuse. To determine that violations of the NYSHRL are revived would likewise require examination of the particular facts and legal theories of each claim, and the result should be no different than for the aforementioned Title IX claims.

Lastly, the plaintiff completely ignores Appellate Division caselaw recently handed down by the Second Department. This is caselaw now being upheld at the Supreme Court level. The defendants rely on <u>Hanson v. Hicksville Union Free School District</u>, 209 A.D.3d 629 (2nd Dept. 2022) and its clear holding that violations of the social services law are not revived by the CVA contrary to any baseless and frivolous arguments made by plaintiff.

## CONCLUSION

It is respectfully requested that the Court issue and order pursuant to F.R.C.P 12(b)(6) dismissing the Plaintiff's Complaint against NYMA and RCNC in its entirety, or in the alternative, dismissing certain causes of action, and with prejudice, together with such other and further relief as this Court deems just, proper, equitable.

Dated:    Williston Park, New York
          February 16, 2023

                                        MULHOLLAND MINION DAVEY
                                        McNIFF & BEYRER

                                        /s/ Matthew Williams
                                        By:  Matthew Williams, Esq.
                                        *Attorneys for Defendant New York Military*
                                        *Academy and Research Center on Natural*
                                        *Conservation, Inc.*
                                        374 Hillside Avenue
                                        Williston Park, New York 11596
                                        MWilliams@mmlaw.us.com

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK)
              : ss.:
COUNTY OF NASSAU)

      THERESA McCAULEY, being duly sworn deposes and says:

      That deponent is not a party to the action, is over the age of 18 years, and resides in Northport, NY.

      That on the 17th day of February, 2023 deponent served a copy of an Memorandum of Law in Reply upon the following:

      ***Via Public Access to Court Electronic Records (PACER)***

      Gilbert A. Segal, Jr.
      *Plaintiff Pro Se*
      106 Michelle Court
      Newark, DE 19711

                                           THERESA McCAULEY

Sworn to before me this
17th day of February, 2023

      Notary Public

MARIANNE E. MITER
**NOTARY** PUBLIC, STATE OF NEW YORK
Registration No. 01MI4790602
Qualified in Nassau County
Commission Expires November 30, 20__