UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GILBERT ALLAN SEGAL JR.,                          :
                    Plaintiff,                          :
v.                                                :
                              :   **OPINION AND ORDER**
NEW YORK MILITARY ACADEMY (all                    :
entities including, but not limited to insurance  :   21 CV 6872 (VB)
representatives etc.); and RESEARCH CENTER         :
ON NATURAL CONSERVATION INC.,                     :
                    Defendants.                        :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Gilbert Allan Segal, Jr. ("Segal"), brings this action against defendants New York Military Academy ("NYMA") and Research Center on Natural Conservation Inc. ("RCNC"), asserting claims of gender discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1); and state-law claims of negligence; negligent hiring, supervision, and retention; and breach of statutory duty to report abuse.[1]

Now pending is defendants' motion to dismiss the third amended complaint.  (Doc. #51).

For the reasons set forth below, the motion to dismiss is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the third amended complaint, and draws all reasonable inferences in Segal's favor, as summarized below.  The Court presumes the parties' familiarity with the

---

[1] Segal originally asserted gender discrimination and retaliation claims pursuant to Title IX of the Education Amendments Act of 1972, but has withdrawn those claims.  (Doc. #55 at 21 n.5).  Accordingly, the Title IX claims are dismissed.

facts and procedural history of this case and recites only those facts relevant to the pending motion.

Segal attended NYMA during fifth and sixth grades, from fall 1996 through spring 1998.[2]  At that time, NYMA was a private coeducational military boarding school for grades five through twelve, located in Cornwall-on-Hudson, New York.

Students attending NYMA—referred to as "cadets"—were allegedly organized into seven "companies" that corresponded to their class year, area of study, or other attributes.  (Doc. #47 ("TAC") ¶ 11).  For example, Segal contends "G Company" consisted of cadets in fifth through eighth grade, and "F Company" consisted of female cadets.  (Id.).  Segal was placed in "Band Company," because Segal participated in NYMA's band.  (Id. ¶ 37).

According to Segal, each company resided in its own barracks.  Segal alleges companies were organized with a strict student command structure such that squad leaders (overseeing four to five cadets) reported to platoon sergeants (platoons consisted of four to five squads), and platoon sergeants reported to the first sergeant of the company (a company had two to three platoons).  First sergeants reported to the company lieutenant, who reported to the company captain.

Segal claims that, while attending NYMA, Segal experienced many sexual assaults and beatings by fellow students.  Segal alleges this abuse was condoned by school staff and administrators, who enforced the hierarchy of authority among the students who facilitated the

---

[2]     Although Segal alleges Segal was permanently removed from NYMA in April 1997 (TAC ¶ 152), which would imply that Segal only attended NYMA for one year, the Court assumes this is a typographical error, because the third amended complaint also alleges Segal returned to NYMA for sixth grade in September 1997 (id. ¶ 132), and suffered abuse as a sixth grader at NYMA at least as late as January 1998.  (Id. ¶ 142).  The Court likewise assumes that allegations on page 23 of the third amended complaint  (id. ¶¶ 143–150) describe events occurring in the spring of 1998.

abuse.  Segal also alleges school staff and administrators did not report signs of abuse to authorities or outside medical professionals.

For example, Segal alleges senior cadets would engage in a practice called "Lock n' Sock," during which they would cover their heads with sheets, enter more junior cadets' barracks in the middle of the night, and beat the more junior cadets with socks filled with bars of soap. (TAC ¶ 23).  Segal alleges other cadets began subjecting Segal to "Lock n' Sock" attacks shortly after Segal arrived at NYMA.  (Id. ¶ 45).  Segal alleges these attacks occurred frequently and increased in severity over time, as the "attackers began to use a variety of weapons including metal broom sticks and mops."  (Id. ¶ 52).

During one such beating in December 1996, Segal alleges falling unconscious.  Segal allegedly regained consciousness naked and on the floor to the sensation of something being removed from Segal's anus.  Segal alleges experiencing "excruciating pain inside of Segal's rectum and anus" following this attack.  (TAC ¶ 58).  Segal alleges similar sexual assaults continued with regularity.  According to Segal, for some assaults and rapes Segal lost consciousness, for others Segal remained fully alert.  Segal alleges exhibiting physical manifestations of the abuse including "a busted lip and bruises."  (Id. ¶ 67).

According to Segal, NYMA staff members declined to intervene to stop the abuse or to respond to Segal's complaints.

For example, in January 1997, Segal alleges Colonel Frank Forgione, an NYMA band instructor, "noticed the signs of abuse" and asked Segal about it.  (TAC ¶ 70).  Segal recounts informing Forgione of being "scared" to go back to the barracks, but alleges Forgione took no action and merely responded it was "ok to be afraid."  (Id. ¶¶ 70–72).

In February 1997, Segal alleges Jamie Norris, a fifth-grade schoolteacher, approached Segal about visible bruising and Segal's limited range of arm motion.  Eventually, Segal allegedly took Norris up on her suggestion to speak with Colette Austin, NYMA's principal. (TAC ¶¶ 77, 78, 82).  Segal allegedly told Austin "the cadets were 'touching [Segal]' on [Segal's] private parts" and "'doing things to [Segal's] body' that made [Segal] feel 'not clean.'" (Id. ¶ 86).

Segal alleges Austin did not inform law enforcement or anyone outside of NYMA of Segal's complaints.  Instead, Segal alleges Austin informed the captain of Segal's student company, Captain Alexander, of Segal's complaints.  Segal alleges Alexander was "G Company staff" and was "a fully grown adult."  (TAC ¶¶ 88, 96).  However, upon learning of Segal's complaints, Alexander allegedly reprimanded Segal in front of the other students in the company that "nobody is special in here no matter what you think you might be" and screamed that Segal would not "get no special treatment down here, making up lies won't get you anywhere!"[3]  (Id. ¶¶ 94, 95).  Segal alleges Alexander then slapped Segal hard enough that Segal collapsed, and then screamed at Segal to stand up while lifting Segal up by the collar, in front of G Company.

In March 1997, Segal alleges Alexander interjected into and ended Segal's phone call after Segal's parents asked "[Segal] what is wrong with you?  Why aren't you talking?"  (TAC ¶¶ 106, 108).  That same month, Segal alleges Junior Reserve Officer Training Corps Sergeant Romero offered to help "keep [Segal] away from" other cadets in Segal's company, to "help Segal 'heal.'"  (Id. ¶ 109).  Segal alleges having visible bruises across both arms and a busted lip at that time.  However, according to Segal, Romero did not report Segal's abuse to law

---

[3]     For ease of reading, this Opinion and Order omits bold and italicized formatting when quoting from the third amended complaint.

enforcement or anyone outside of NYMA.

In April 1997, Segal alleges being beaten with a broken metal broom stick and sodomized.  Segal allegedly raised a hand to stop the beating and was cut with the broom stick. Segal sought medical attention, but alleges the NYMA infirmary physician did not ask any questions about how the injury occurred.  (TAC ¶ 121).

Segal alleges this abuse continued during Segal's sixth grade year at NYMA and eventually led to Segal's departure from the school.

Segal further alleges NYMA "continued to maintain a culture of hazing and abuse" after Segal left and describes court actions in which other cadets alleged experiencing similarly vicious abuse.  (TAC ¶ 164; see also id. ¶¶ 165–179; 185–204).

By 2010, Segal alleges NYMA's enrollment had dropped to 145 students (down from 525 cadets in the 1960s), and that NYMA announced it was suspending operations for the 2011–2012 year.  Segal contends NYMA said in press releases that negative publicity about hazing and abuse allegations was one of the factors that drove the decision to close.  However, Segal contends alumni were able to raise sufficient funds to keep the school in operation until 2015, when "lagging admissions forced the academy into bankruptcy and a bankruptcy auction." (TAC ¶ 183).

**DISCUSSION**

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).[4]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    NYMA Bankruptcy Filings

Defendants argue this action must be dismissed because Segal asserts pre-petition claims that were discharged pursuant to NYMA's chapter 11 bankruptcy proceedings, which included a sale of NYMA's assets to defendant RCNC free and clear of pre-petition liabilities.  In so arguing, defendants rely on numerous documents and orders filed in or otherwise relevant to NYMA's chapter 11 bankruptcy, In re N.Y. Mil. Acad., No. 15-35379 (CGM) (Bankr. S.D.N.Y. filed Mar. 3, 2015).  (See Docs. ## 51-3–51-8 (the "NYMA Bankruptcy Materials")).

The Court will not consider the NYMA Bankruptcy Materials in deciding the motion to dismiss except to take judicial notice of the fact that the information in such documents, to the extent publicly filed, was made public, and that such litigation exists.  Accordingly, at this stage, the Court does not have a sufficient record before it to properly consider defendants' arguments.

---

[4]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

A.    <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).[5] "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." <u>Id</u>.

The Court may also "take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." <u>Lewis v. M&T Bank</u>, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (summary order) (citing Fed. R. Evid. 201(b)(2)).

"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Glob. Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d Cir. 2006). In addition, a court may take judicial notice of public documents "for the purpose of establishing that the information in the various documents was publicly available." <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008). Accordingly, judicial notice of publicly available documents is limited to considering "what statements the documents contained and not for the truth of the matters asserted in the documents." <u>Lewis v. M&T Bank</u>, 2022 WL

---

[5]      Neither party has argued the Court should convert the pending motion into a motion for summary judgment. And the Court, in an exercise of its discretion, declines to do so. <u>Timperio v. Bronx-Lebanon Hosp. Ctr.</u>, 384 F. Supp. 3d 425, 430 (S.D.N.Y. 2019) ("Federal courts have complete discretion to determine whether to convert a motion to dismiss to one for summary judgment.").

775758, at *1.

"[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d at 426.  Thus, "[d]ismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Id. at 425.

      B.    Analysis

Here, the NYMA Bankruptcy Materials are not attached to, incorporated by reference in, or integral to Segal's complaint.  Segal alleges NYMA filed for bankruptcy due, in part, to the publicity around sexual harassment and assault complaints, but does not discuss or reference specific bankruptcy proceedings, documents, or orders.  Accordingly, in the third amended complaint, Segal does not rely heavily upon the terms and effects of the NYMA Bankruptcy Materials, or incorporate them by reference.  See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d at 156 (finding "the complaint's reference to [the plaintiff's president's] guilty pleas [in an unrelated criminal proceeding] cannot open the door to the content of [the] testimony proffered in exchange for the pleas, as the nexus between the two is too attenuated to render that testimony integral to the complaint") (collecting similar cases).

Thus, the NYMA Bankruptcy Materials may only be considered to the extent the Court may take judicial notice of them.  However, in offering the NYMA Bankruptcy Materials, defendants ask the Court to credit as true certain statements and determinations made in the NYMA Bankruptcy Materials, and to rely on these statements and determinations to dismiss Segal's case.  This the Court cannot do at the motion to dismiss stage.  See In re DDAVP Indirect Purchaser Antitrust Litig., 903 F. Supp. 2d 198, 211 (S.D.N.Y. 2012) (denying

plaintiffs' request to take judicial notice of court filings in other lawsuits involving the defendants because it would require the court "to look to facts alleged within documents filed in other court cases not to establish their existence, but rather to provide the reasoned basis for the court's conclusion").[6]

If appropriate, the Court might consider the NYMA Bankruptcy Materials upon a motion for summary judgment.[7] But, at this early stage, defendants have not established the NYMA Bankruptcy Materials are incorporated by reference in or integral to the complaint, or that the Court may take judicial notice of them in the manner requested by defendants.

Accordingly, in considering the instant motion, the Court will not consider the NYMA Bankruptcy Materials or dismiss Segal's claims on the grounds that they were discharged in NYMA's bankruptcy, or that RCNC purchased NYMA's assets free and clear of liability for Segal's claims.

---

[6]     If provided with the notice of NYMA's bankruptcy and the "bar date" for filing a proof of claim, allegedly published in the Poughkeepsie Journal, the Court could have taken judicial notice of the fact that such notice was published. However, NYMA did not provide a copy of the notice. Instead, it provides only (i) a "Classified Ad Receipt" that appears to be an invoice (Doc. #51-6), which is not a publicly available document of which the Court may take judicial notice, and (ii) bankruptcy court orders directing the publication of such notice. (Doc. #51-5 at 7). Accordingly, the Court does not take judicial notice of the fact that a notice of NYMA's bankruptcy "bar date" was published.

[7]     In re Lehman Brothers Holding Inc., on which defendants rely, involved cross-motions for summary judgment. 492 B.R. 191 (Bankr. S.D.N.Y. 2013), aff'd, 526 B.R. 481 (S.D.N.Y. 2014), aff'd, 645 F. App'x 6 (2d Cir. 2016) (summary order). In fact, in Lehman Brothers, the bankruptcy court notes the district court did not interpret the asset purchase agreement in connection with the defendants' prior motion to dismiss because "[i]n ruling on the motion to dismiss, the District Court, as it was required to do under Federal Rule of Civil Procedure 12(b)(6), assumed as true" plaintiff's allegations regarding the applicability of the asset purchase agreement. Id. at 193 n.1.

III.   <u>Sale to RCNC</u>

Defendants argue Segal's claims must be dismissed because the transfer of NYMA's assets to RCNC was a "sale" as opposed to a "de facto merger" that, under New York law, would impose NYMA's pre-sale liabilities on RCNC.  (Doc. #51 at ECF 32).[8]  In support, defendants submit RCNC's certificate of incorporation (Doc. #51-9), a license agreement between RCNC and NYMA (Doc. #51-10), an undated list of the NYMA board of trustees (Doc. #51-11), a corporate resolution of the NYMA board dated October 30, 2015 (Doc. #51-12), and a set of partially executed signature pages for two sets of NYMA corporate resolutions dated May 20, 2017, and May 30, 2020 (Doc. #51-13), and argue the Court may consider them.

The Court disagrees.

Other than that the sale to RCNC occurred, Segal does not allege any facts in the third amended complaint about the terms of the sale.  Indeed, defendants' arguments on this point refer to virtually none of the facts alleged in Segal's lawsuit, and instead focus on the identities of NYMA's board members before and after the sale to RCNC, whether NYMA continued to operate as a separate entity after the sale, the purpose of each defendant's corporate organization, and what liabilities RCNC assumed through the sale.  (<u>See</u> Doc. #51 at ECF 32–37).  Like defendants' arguments with respect to the NYMA Bankruptcy Materials, these arguments require consideration of materials outside the pleadings and are thus improperly raised on a motion to dismiss.

Defendants may revisit these arguments at summary judgment once the Court has before it a full record regarding NYMA's sale to RCNC.  However, at this stage, the Court will not

---

[8]    "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

consider these materials and will not dismiss Segal's claims on the ground that the sale to RCNC

was a "sale" as opposed to a "de facto merger."

IV.     NYSHRL Claims

Defendants argue Segal's NYSHRL claims were not revived by the New York Child

Victims Act ("CVA"), and therefore, are untimely and should be dismissed.[9]

The Court disagrees.

The CVA, enacted February 14, 2019, provides:

> Notwithstanding any provision of law which imposes a period of limitation to the
> contrary . . ., every civil claim or cause of action brought against any party alleging
> intentional or negligent acts or omissions by a person for physical, psychological,
> or other injury or condition suffered as a result of conduct which would constitute
> a sexual offense as defined in article one hundred thirty of the penal law committed
> against a child less than eighteen years of age . . . which is barred as of the effective
> date of this section because the applicable period of limitation has expired . . . is
> hereby revived, and action thereon may be commenced not earlier than six months
> after, and not later than two years and six months after the effective date of this
> section.

N.Y. C.P.L.R. § 214-g.

According to defendants, Segal's NYSHRL claims for gender discrimination and

retaliation were not revived by the CVA because "[d]iscrimination and retaliation claims are not

violations of the penal law," and "do not necessarily implicate allegations of sexual abuse."

(Doc. #51 at ECF 38).  However, Segal alleges being gang raped and forcibly sodomized, which

clearly comprise "conduct which would constitute a sexual offense" under state penal law.  N.Y.

C.P.L.R. § 214-g.  And this lawsuit, which was commenced on August 14, 2021, was filed

within the window established by the CVA.  See In re Roman Cath. Diocese of Syracuse, 628

B.R. 571, 574 n.2 (Bankr. N.D.N.Y. 2021) (noting the deadline to file a CVA lawsuit "was

---

[9]     Defendants do not argue the CVA did not revive Segal's claims for negligence (fifth
cause of action); negligent hiring, supervision, and retention (sixth cause of action); or breach of
statutory duty to report (seventh cause of action).

extended to August 14, 2021 due to the COVID-19 pandemic").  Therefore, Segal's NYSHRL claims, which allege sexual assault and are asserted in a timely-filed lawsuit, were revived by the CVA.

Defendants cite no authority supporting their argument that state-law discrimination and retaliation claims were not revived by the CVA solely because they are discrimination and retaliation claims, and the Court cannot independently locate any.  Cf. Coe v. Regan, 2022 WL 467053, at *5 (E.D.N.Y. Feb. 3, 2022) ("assuming without deciding that CVA . . . applies to gender discrimination claims," and finding plaintiff "plausibly plead[ed] that she was a minor and that [defendant], in the course of his employment . . . sexually assaulted her, putting the alleged wrongful conduct within the ambit of the CVA," but dismissing federal claims on statute of limitations grounds), appeal filed, No. 22-298 (2d Cir. argued Mar. 8, 2023).

Accordingly, Segal's NYSHRL claims may proceed.

V.    Breach of Statutory Duty to Report Child Abuse Claim

Defendants argue the failure to report child abuse claim must be dismissed because Segal does not allege abuse by a "person legally responsible" for Segal's care under New York law. (Doc. #51 at ECF 39).

The Court disagrees.

Section 413 of the New York Social Services Law requires a "school official"[10] to report suspected child abuse when a "person legally responsible for such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or

---

[10]    The term "school official . . . includes but is not limited to [a] school teacher, school guidance counselor, school psychologist, school social worker, school nurse, school administrator or other school personnel required to hold a teaching or administrative license or certificate."  N.Y. Soc. Serv. Law § 413(1)(a).

circumstances which, if correct, would render the child an abused or maltreated child."  N.Y.

Soc. Serv. Law § 413(1)(a).

    For purposes of Section 413, "abused child" and "person legally responsible" are defined

by the New York Family Court Act.  N.Y. Soc. Serv. Law § 412(1), (3).  The Family Court Act

defines an "[a]bused child" as follows:

> a child less than eighteen years of age whose parent or other person legally
> responsible for his care
>
> (i) inflicts or allows to be inflicted upon such child physical injury by other than
> accidental means which causes or creates a substantial risk of . . . . protracted
> impairment of physical or emotional health . . . , or
>
> (ii) creates or allows to be created a substantial risk of physical injury to such child
> by other than accidental means which would be likely to cause . . . protracted
> impairment of physical or emotional health . . . , or
>
> (iii) . . . commits, or allows to be committed an offense against such child defined
> in article one hundred thirty of the penal law.

N.Y. Fam. Ct. Act § 1012(e).  A "[p]erson legally responsible" "includes the child's custodian,

guardian, [or] any other person responsible for the child's care at the relevant time," and "may

include any person continually or at regular intervals found in the same household as the child

when the conduct of such person causes or contributes to the abuse or neglect of the child."  Id.

§ 1012(g); see also In re Catherine G. v. Cnty. of Essex, 3 N.Y.3d 175, 179 (2004).

    In Hanson v. Hicksville Union Free School District, the Second Department held that a

guidance counselor who allegedly abused the plaintiff was not a "person legally responsible" for

the plaintiff, and therefore, the plaintiff did not allege she was an "abused child," obviating any

statutory duty to report.  209 A.D.3d 629, 631 (2d Dep't 2022).  Defendants argue the Court

should likewise determine Segal was not abused by "persons legally responsible" because

Segal's alleged abusers were fellow students.

However, Segal alleges NYMA staff, including then-principal Austin and Captain Alexander, who are "persons legally responsible," allowed and even encouraged Segal's abuse by failing to intervene notwithstanding Segal's explicit complaints of sexual abuse.  And Segal alleges Alexander reprimanded and slapped Segal for reporting the alleged abuse in front of the rest of the student company, including Segal's alleged abusers.  (TAC ¶¶ 86, 94, 96); see Davila v. Orange Cnty., 215 A.D.3d 632, 635 (2d Dep't 2023) (employees of a boarding school were "person[s] legally responsible" for purposes of Section 413 claim brought pursuant to the CVA). This behavior plausibly pleads NYMA staff "allow[ed] to be inflicted upon [Segal] physical injury" or "allow[ed] to be created a substantial risk of physical injury" or "allow[ed] to be committed" sexual offenses against Segal under the New York penal law, such that Segal has adequately pleaded he was an "abused child."  N.Y. Fam. Ct. Act § 1012(e).

Accordingly, plaintiff's failure to report child abuse claim may proceed.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #51).

By separate Order, the Court will schedule an initial conference.

By September 5, 2023, defendants shall file an answer to the third amended complaint.

Dated: August 14, 2023
       White Plains, NY                         SO ORDERED:

                                                Vincent L. Briccetti
                                                United States District Judge